## United States District Court
### District of Minnesota

| | |
|---|---|
| Candia Iracheta, | Court file no. _____ |
| Plaintiff, | |
| v. | **Complaint** |
| Springer Collections, Inc., | **JURY TRIAL DEMANDED** |
| Defendant(s). | |

### Jurisdiction

1.  Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) for the FDCPA claims.

2.  This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") in its illegal efforts to collect a consumer debt from Plaintiff.

3.  Venue is proper because the acts and transactions occurred in Minnesota, Plaintiff resides in Minnesota, and Defendant transacts business in Minnesota.

**Parties**

4.    Plaintiff Candia Iracheta is a natural person who resides in Chaska,

County of Carver, State of Minnesota, and is a "consumer" as defined by

15 U.S.C. § 1692a(3).

5.    Defendant Springer Collections, Inc. (hereinafter "Defendant Springer") is

a collection agency operating from an address of 876 E 7th Street, St. Paul,

MN 55106, and is a "debt collector" as that term is defined by 15 U.S.C. §

1692a(6).

**Factual Allegations**

*Background*

6.    In or before 2012, Plaintiff allegedly incurred an alleged financial

obligation that was primarily for personal, family or household purposes

and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), a residential

lease and related charges for an apartment.

7.    Plaintiff moved into the apartment in or around December 2010. Plaintiff

lived in the apartment with her son and husband. Plaintiff did not own

any pets and Plaintiff did not allow pets into her apartment.

8.    Plaintiff left the apartment in or around April of 2012.

9.    After leaving the apartment, Plaintiff has entered into other residential leases.

10.   At some point after Plaintiff left the apartment, the debt was consigned, placed or otherwise transferred to Defendant Springer for collection from Plaintiff.

11.   In or around April 2015, Plaintiff began looking for an apartment. When she applied for an apartment, her application was denied. Plaintiff then learned she was denied, in part, because of an alleged unpaid debt to her former landlord.

12.   Plaintiff then called her former landlord to dispute the alleged debt. Plaintiff was unable to obtain any information and her efforts were unsuccessful. Shortly thereafter, she pulled her credit reports.

13.   Plaintiff then learned for the first time that Defendant Springer was reporting the alleged debt with an alleged balance of $6,400. According to at least one of Plaintiff's credit reports, Defendant Springer has been reporting this alleged since August 2013.

*Defendant Springer Harasses and Misleads Plaintiff*

14.   After finding the debt on her credit report in or around April 2015, Plaintiff called Defendant Springer to discuss the alleged debt , and this call became

a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

15.     Plaintiff spoke with an individual that identified himself as "Mr. Josh Frost."

16.     Plaintiff explained that she was calling to get more information about the alleged debt.

17.     Mr. Frost then listed off a number of charges for alleged damages for the apartment, including charges related to a dog, and damages from dog urine. Those charges were in excess of $2,000.

18.     Plaintiff said she believed she was responsible for some back rent, but she also explained that many of the charges were incorrect and disputed the total amount. Plaintiff explained that she did not have a dog, and she could not have even afforded to own a dog.

19.     Mr. Frost said that he would talk to the apartment complex and perhaps they would go down to $4,400, or words to that effect.

20.     Mr. Frost further explained that the entire amount would have to paid before it came off her credit report, or words to that effect.

21.     Items on credit reports typically "fall off" after a designated time period. In addition, pursuant to the Fair Credit Reporting Act, consumers have the

right to dispute inaccurate information on their credit reports (*see* 15 U.S.C. § 1681, et seq.). Those disputes can result in removal of the disputed information. Consumers also have the right to dispute a debt pursuant to the Fair Debt Collection Practices Act (*see* 15 U.S.C. § 1692g). These disputes can also result in the removal of disputed information.

22.     Mr. Frost also stated that nobody would rent to Plaintiff with this debt on her credit report until it was paid in full, or words to that effect.

23.     Plaintiff has rented at least one apartment since Defendant Springer started reporting this debt to the credit reporting agencies in August 2013. In addition, it is unlikely that Mr. Frost consulted with every potential landlord in the Twin Cities area before making that statement.

24.     Mr. Frost then said that no landlord would rent to Plaintiff even if the balance was only $900, because landlords "won't do each other dirty like that" or words to that effect.

25.     Shortly thereafter, Plaintiff ended the call.

26.     By stating that Plaintiff's only way to remove this item from her credit report was to pay it in full, Defendant deceptively and unfairly misled Plaintiff, which violated numerous and multiple provisions of the FDCPA,

including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), and 1692f, among others.

27. By continuing to insist on payment, after Plaintiff disputed the amount and refused to pay it, Defendant violated numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), and 1692f, among others.

28. By stating that nobody would rent to Plaintiff with the alleged debt on her credit report, Defendant deceptively and unfairly misled Plaintiff and violated numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), and 1692f, among others.

*Defendant Springer Continues to Mislead Plaintiff*

29. After the above-described collection communications, Defendant Springer continued to contact Plaintiff by telephone, and each one of these calls was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

30. On around April 27, 2015, received a phone call from Mr. Frost.

31.    Mr. Frost was calling to see if Plaintiff had received the documentation he sent in regards to the debt.

32.    Plaintiff stated that he had not, and Mr. Frost said he would send the information via e-mail.

33.    Shortly thereafter, the call ended.

34.    On or around May 8, 2015, Plaintiff received another call from Mr. Frost, who asked if Plaintiff had received his emails in regards to the debt.

35.    Plaintiff explained that she had not received them.

36.    Mr. Frost then provided additional details about the alleged dog and alleged dog damage.

37.    Mr. Frost also told Plaintiff that if she wanted to get the debt off her record, she needed to "get on the ball" and that if Plaintiff wanted to get lower interest rates on anything, the debt needed to be paid in full, or words to that effect.

38.    Upon information and belief, Mr. Frost does not issue credit, and Mr. Frost does not have sufficient information to determine the potential interest rates on credit that would be available to Plaintiff. This statement was intended to pressure Plaintiff into paying for a debt that she had expressly disputed.

39.   Plaintiff had provided specific information refuting her alleged liability for the alleged debt, and had also indicated she refused to pay the alleged debt.

40.   By continuing to contact Plaintiff and by making misleading statements about Plaintiff's ability to obtain credit at certain interest rates, Defendant Springer was harassing Plaintiff in the hope that she would make payment towards the alleged debt.

41.   The above-described communications were collection communications in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, and 1692e(10), amongst others.

**Summary**

42.   All of the above-described collection communications by Defendant Springer and other collection employees employed by Defendant Springer, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

43.   Plaintiff has suffered actual damages as a result of Defendant Springer's illegal conduct in the form of emotional distress, including but not limited

to: stress, frustration, anxiety, loss of sleep, amongst other negative emotions.

## Respondeat Superior Liability

44. The acts and omissions of the debt collectors employed as agents by Defendant Springer who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Springer.

45. The acts and omissions by these other debt collectors were incidental to, or of the general nature as, the responsibilities these agents were authorized to perform by Defendant Springer in collecting consumer debts.

46. By committing these acts and omissions against Plaintiff, these individual debt collectors were motivated to benefit their principal, Defendant Springer.

47. Defendant Springer is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA in their attempts to collect this debt from Plaintiff.

## Trial by Jury

48.   Plaintiff is entitled to and hereby respectfully demand a trial by jury.

US Const. Amend. 7; Fed. R. Civ. P. 38.


## Cause of Action

### Count 1:
### Violations of the Fair Debt Collection Practices Act
### 15 U.S.C. §§ 1692 et seq.

49.   Plaintiff incorporates the foregoing paragraphs as though fully stated

herein.

50.   The foregoing intentional and negligent acts and omissions of Defendant

Springer constitute numerous and multiple violations of the FDCPA

including, but not limited to, each and every one of the above-cited

provisions of the FDCPA, 15 U.S.C. §§ 1692–1692p.

51.   As a result of Defendant Springer's violations of the FDCPA, Plaintiff is

entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory

damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)

(A); and, reasonable attorney fees and costs pursuant to 15 U.S.C. §

1692k(a)(3) from each and every Defendant.

## Request for Relief

**Wherefore**, Plaintiff requests that judgment be entered against each Defendant

for:


### Count 1:
### Violations of the Fair Debt Collection Practices Act
### 15 U.S.C. §§ 1692 et seq.

- statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- actual damages pursuant to 15 U.S.C. § 1692k(a)(1) in an amount to be

  determined at trial;

- costs of litigation and reasonable attorney fees pursuant to 15 U.S.C. §

  1692k(a)(3); and

- for such other and further relief as may be just and proper.


Respectfully submitted,

**The Ryder Law Firm, LLC**

Date: June 2, 2015          *s/Randall P. Ryder*
                            Randall P. Ryder (#389957)
                            2701 University Avenue SE, #209
                            Minneapolis, MN 55414

                            phone • 612.424.3770
                            fax • 612.605.3247
                            e-mail • randall@theryderlawfirm.com

                            Attorney for Plaintiff

# Verification of Complaint and Certification

STATE OF MINNESOTA      )
                              ) ss

COUNTY OF HENNEPIN    )

Pursuant to 28 U.S.C. § 1746, Plaintiff Candia Iracheta having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorney(s) and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 5/8/15

Candia Iracheta